*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* SHEPHERD/WAKEFIELD, Minors.

UNPUBLISHED
March 30, 2023

No. 362883
Wayne Circuit Court
Family Division
LC No. 2022-000166-NA

Before: CAVANAGH, P.J., and MARKEY and BORRELLO, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating her parental rights to her two children (AW and CS) pursuant to MCL 712A.19b(3)(b)(*i*) (parent's act caused physical injury and injury is reasonably likely to happen again), (g) (failure to provide proper care and custody), (j) (reasonable likelihood of harm if returned to parent's home), and (k)(*iii*) (battering, torture, or other severe physical abuse of child or sibling). On appeal, respondent argues there was not clear and convincing evidence to support terminating respondent's parental rights under MCL 712A.19(b)(3)(b)(*i*), (g), (j) or (k)(*iii*), and that the court erred in finding it was in the children's best interests to terminate her rights because the court did not address the children's relative placements, offer her a case service plan, or consider the bond she had with her children. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

Petitioner filed a petition seeking termination of respondent's parental alleging that it was contrary to the children's welfare to remain with respondent because respondent physically abused one of the children. On November 29, 2021, Children's Protective Services (CPS) received a complaint alleging that AW was physically abused by respondent. AW disclosed to CPS that on November 4, 2021, respondent hit her eight times in the back of the head with the butt of a pistol because she had a boy in the house. AW also reported that respondent threatened to kill her if she did not clean up the blood that was dripping from the injuries respondent inflicted on her. AW reported that she had large cuts on her scalp and bruising on her arms and shoulder from respondent's physical abuse. On November 30, 2021, Beaumont Hospital personnel found a 2-centimeter healing wound on the back of AW's head. Respondent admitted to physically fighting AW, but she claimed the cut came from punching AW in the head with her diamond ring.

Respondent also admitted to hitting AW with a broom handle. CS reported that respondent had a pink gun that she used to hit AW.

The petition alleged that respondent showed no remorse for the incident and no interest in AW returning home from staying with her second cousin. The petition also alleged that AW's father was financially unfit for AW to live with, hence, the petition requested AW be placed with petitioner. The petition sought removal of the children from respondent's care and termination of respondent's parental rights based on MCL 712A.19b(3)(b)(*i*), (g), (j), and (k)(*iii*). The trial court removed the children at the preliminary hearing after finding that they were at substantial risk of imminent harm with respondent.

After a tender-years hearing, the trial court admitted the following statements from CS:

My mommy got a pink gun from under the bed and butted [AW's] head with it and her head started bleeding. [Respondent] hit [AW's] head with a wooden stick and hit her so hard. [Respondent] whipped [AW] with a belt. [Respondent] was going to shoot [AW] but grandmother picked [AW] up in time and [respondent] kicked [AW] out of the house.

At trial,[1] AW testified that on November 4, 2021, respondent began to hit AW with a handgun after she found out AW had a boy in the house. During the incident, respondent threatened to kill AW. The beating left multiple scars on the front, side, and back of AW's head. AW also testified that respondent used a thick piece of wood and a broom to hit AW on her hands, feet, knees, and arms. Respondent also punched AW. Respondent told AW that this was going to be "an [a**] beating" AW was "going to remember." The incident lasted for about an hour and only ended when AW's cousin came to pick her up.[2] AW testified that she did not want to return to respondent's house and that she had no relationship with her father. AW said respondent had hit her before, but it did not occur often. AW testified that she was afraid of respondent, and that she had always been afraid of respondent.

Stephanie Patterson, an investigator for CPS, testified that when she met AW in December, 2021, AW had a healing wound toward the back of her head that was about 2 centimeters long. Patterson testified that respondent admitted to having a physical altercation with AW. Respondent also admitted to Patterson that respondent "molly-whopped" AW in the back of the head, and punched her in the back of the head while wearing a diamond ring that caused a cut in AW's head. Patterson testified that in light of the violent altercation, she believed it was in the children's best interests to have respondent's parental rights terminated.

Respondent testified that she regretted what she did to AW, and she loved both of her children. Respondent also testified that she had been in communication with both children since

---

[1] The trial was also combined with the tender-years motion and best-interests hearing.

[2] There is a factual discrepancy as to who picked AW up from respondent's house on November 4, 2021. CS reported that it was the grandmother, but AW and respondent testified that it was a cousin.

they were removed. Respondent admitted to owning a handgun at the time of the incident, but testified that she kept it at her mother's house, and that she never had it at her house. Respondent admitted that AW's testimony about the incident was accurate, except for the part concerning the gun. Additionally, respondent claimed that the incident spanned an hour because she was on the phone with her mother, trying to get someone to come and get AW so that it would not "get out of hand." Respondent stated that AW was spoiled, and she had a hard time controlling AW, but that respondent did not have trouble controlling herself. Later in the trial, respondent testified that she wanted to sign over her parental rights to both CS and AW.

During closing argument, petitioner argued that it had established jurisdiction and statutory grounds under MCL 712A.19b(3)(b)(*i*), (g), (j), and (k)(*iii*) to support terminating respondent's parental rights. Petitioner argued that the altercation between respondent and AW supported each of the alleged statutory grounds. Notably, petitioner highlighted that respondent did not deny that she hit AW and made AW bleed from her head. Petitioner also argued that terminating respondent's parental rights was in the best interests of AW and CS because of the incident, respondent's stated desire to give up her parental rights, and AW's wish not to remain with respondent. Respondent did not contest jurisdiction, and with regard to the statutory grounds, respondent admitted that she could not dispute that AW received the injuries. However, respondent argued that it was not in the best interests of the children to terminate her rights, especially since AW and respondent communicated at times, evidencing a bond between them.

The court found that petitioner established statutory grounds to exercise jurisdiction. The court also found that there was clear and convincing evidence to terminate respondent's parental rights because of the incident between respondent and AW, which was corroborated by AW, CS, and respondent. Specifically, the court found that on November 4, 2021, respondent had been drinking alcohol, came back and found a boy in the house with AW, made the boy leave the house, and began cursing and beating AW. Respondent used a pink gun to beat AW on the head until AW was bleeding, and then respondent made AW clean up all the blood from the floor and walls. This was the worst beating AW had received, though it was not the first. AW was afraid of respondent. Respondent also hit AW with a broomstick and a wooden stick, and used her hands and feet to punch and kick AW. The beating spanned roughly an hour. AW incurred multiple cuts on her head, swollen knees, and severe bruises to her upper torso. Respondent threatened AW that respondent was going to kill her. Respondent was out of control. Respondent also told AW not to go to the hospital because CPS would place her in foster care. Respondent admitted to beating AW until AW started to bleed and told the court that she wanted to give up her parental rights. The court then terminated respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (g), (j), and (k)(*iii*). The court also conducted a best-interests hearing and determined that it was in the best interests of the children to terminate respondent's parental rights because of the violence respondent demonstrated with AW.

## II. ANALYSIS

On appeal, respondent argues that the trial court erred in its determinations as to whether sufficient grounds for termination were proven. Additionally, respondent argues that she should have been provided with a care plan in lieu of immediate termination.

In their brief on appeal, the Department of Health and Human Services (department) answers that due to the violence inflicted on AW, it was mandated to seek termination and thereafter it was up to the trial court whether to terminate or to provide services for respondent. The department further argues that the trial court correctly chose termination as respondent never indicated to the trial court that she wanted to engage in services but she clearly indicated to the trial court her desire to sign over her rights to her children.

"We review for clear error a trial court's finding of whether a statutory ground for termination has been proven by clear and convincing evidence." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). "A finding is only clearly erroneous if an appellate court is left with a definite and firm conviction that a mistake has been made." *In re Benavides*, 334 Mich App 162, 167; 964 NW2d 108 (2020) (quotation marks and citation omitted).

We conclude after review of the record that the trial court did not err in terminating respondent's parental rights to AW and CS. Although respondent argues that the trial court erred by terminating her rights without providing her services to reunify the family, at no time did she request any assistance and in fact she told the court that she wished to sign over her parental rights. Respondent's argument on this issue also fails to recognize that while the general rule is that "[r]easonable efforts to reunify the child and family must be made in all cases[,]" there is an exception to that rule in cases such as this were there are aggravated circumstances pursuant to MCL 722.638. MCL 712A.19a(2); *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). Here, there is no question that respondent abused AW and abusing a child or sibling by battering is considered an aggravating circumstance. MCL 712A.19a(2); MCL 722.638(1)(a)(*iii*). The trial court found that respondent battered AW when it found statutory grounds for termination under MCL 712A.19b(3)(k)(*iii*) (allowing termination where a parent has battered the child or a sibling). This finding was not clearly erroneous in light of the fact that respondent admitted to battering AW when she said she beat AW in the head until AW's head was bleeding. AW and CS testified that respondent battered AW with a gun, a thick wooden stick, and a broom handle, along with respondent's own hands and feet. That respondent used wooden objects to beat AW until she bled from the head is undisputed, and therefore, the trial court did not clearly err when it found respondent battered AW. As argued by the department on appeal, because the trial court found aggravating circumstances existed, it was not obligated to provide respondent with a case service plan or other reasonable efforts.

Our review of the record in this matter makes clear that respondent put her children at serious risk. She admittedly beat one child for almost an hour and admitted to subjecting the minor child to prior beatings. AW testified that she was afraid of respondent and respondent seemingly showed no remorse for having beaten her child to a point where she should have been hospitalized. Further, during the trial, the record makes clear that respondent's anger issues remained as she grew frustrated and told the trial court she wanted to relinquish her parental rights. As the department states in the brief on appeal, respondent stated: "If I'm signing my rights over, I don't see why we are still in court." After questioning from the court, respondent again stated her desire to relinquish her parental rights while naming the individuals with whom she wanted her children placed. Contrary to her assertions on appeal, never did respondent ask for and even insinuate that she wanted to engage in services. Given the brutality of the beating, the trial court correctly terminated her parental rights. We discern no error.

-4-

On appeal, respondent also argues that the trial court failed to address placement of the children prior to finding that termination was proper. The trial court did not address AW's placement with her second cousin when it conclusively stated it was in the children's best interests to terminate respondent's parental rights.

We recognize that a trial court must expressly consider a child's placement with a relative who falls within the definition of relative in MCL 712A.13a(1)(j). However, second cousins were not considered relatives under MCL 712A.13a(1)(j), as amended by 2016 PA 191.[3]

> "Relative" means an individual who is at least 18 years of age and related to the child by blood, marriage, or adoption, as grandparent, great-grandparent, great-great-grandparent, aunt or uncle, great-aunt or great-uncle, great-great-aunt or great-great-uncle, sibling, stepsibling, nephew or niece, first cousin or first cousin once removed, and the spouse of any of the above, even after the marriage has ended by death or divorce. A stepparent, ex-stepparent, or the parent who shares custody of a half-sibling shall be considered a relative for the purpose of placement. [MCL 712A.13a(1)(j), as amended by 2016 PA 191.]

Accordingly, the trial court was not obligated to address AW's placement before terminating respondent's parental rights. CS was not placed with a relative under the version of MCL 712A.13a(1)(j) applicable when respondent's parental rights were terminated; he was placed with his biological father, but biological parents were not considered relatives for purposes of the statute. See *In re Mota*, 334 Mich App 300, 322; 964 NW2d 881 (2020) (holding that a child's biological parent is not considered a relative under MCL 712A.13a(1)(j)). Because neither of the children were placed with a relative within the version of MCL 712A.13a(1)(j) applicable at the time, the trial court did not err by failing to address either child's placement before terminating respondent's parental rights.

Additionally, respondent argues that the trial court clearly erred when it found that it was in the children's best interests to terminate respondent's parental rights. We review a "trial court's determination regarding the children's best interests" for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). Clear error exists when the reviewing court has a firm and definite conviction that a mistake was made. *Benavides*, 334 Mich App at 167.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). The trial court should consider all of the evidence when determining

---

[3] MCL 712A.13a(1)(j) was amended, effective October, 2022. Respondent's parental rights were terminated on July 7, 2022, meaning the previous version of MCL 712A.13a(1)(j) was applicable at the time of the trial. However, even under the current version of MCL 712A.13a(1)(j), placement with a second cousin does not count as a "relative placement." See MCL 712A.13a(1)(j) (defining relative as related within the fifth degree); see also MCL 710.22(y) (omitting second cousins from the definition of a relative within the fifth degree).

whether it is in the child's best interests to terminate parental rights. *White*, 303 Mich App at 713. The court should consider "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Id*. (citation omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 714. The trial court is "required to explicitly address each child's placement with relatives at the time of the termination hearing." *In re Olive/Metts Minors*, 297 Mich App 35, 44; 823 NW2d 144 (2012). A trial court's failure to address the children's placement with a relative is clear error requiring the best interests finding to be vacated. *Id*.

Respondent did not offer any evidence describing the bond she had with CS, nor did she raise any specific examples on appeal. Respondent asserted that she still talked to AW, and that this evidenced a bond between them. AW, however, said she called her mom about her identification and because she missed school, not for any other reason. On the contrary, AW testified that she was afraid of respondent and did not want to live with her. AW was not even sure she wanted any kind of future relationship with respondent. Respondent fails to point out that she also indicated to the court that she wished to voluntarily relinquish her rights to her children. When questioned by the trial court if that was her intent, she again indicated her desire to relinquish her parental rights, seemingly, at least in part, because she wanted to be done with the court proceedings. It is disingenuous for respondent to argue on appeal that she had a bond with her children when the record clearly reveals her desire to relinquish her parental rights. On this record we conclude that the trial court did not clearly err when it found that it was in the children's best interests to terminate respondent's parental rights.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Jane E. Markey
/s/ Stephen L. Borrello